**Michael J. Hickman**, SBN#149624
Email: m.hickman@musickpeeler.com
MUSICK, PEELER & GARRETT LLP
225 Broadway, Suite 1900
San Diego, CA 92101-5028
Telephone: 619.525.2500
Facsimile: 619.231.1234

**Peter E. Heuser,** SBN#111600
Email: pheuser@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

*Attorneys for Plaintiff,*
*Coast Cutlery Co. dba Coast Products*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **COAST CUTLERY CO. dba COAST PRODUCTS**, an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**IDEAPOND, LLC,** a Nevada limited liability company, and **DENNIS K. BERTKEN**, an individual,<br><br>Defendants. | Case No. '21CV0033 AJB MDD<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, LANHAM ACT VIOLATIONS, UNFAIR COMPETITION, AND PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Coast Cutlery Co. dba Coast Products ("Coast") brings this Complaint against Defendant Ideapond, LLC ("Ideapond") and Defendant Dennis K. Bertken ("Bertken") (collectively "Defendants"), and alleges as follows:

## THE PARTIES

### Coast and its Products

1. Coast is an Oregon company headquartered in Portland, Oregon and doing business throughout the United States and in many foreign countries. Coast is primarily in the business of selling lighting products such as flashlights, headlamps, and work lights, as well as sporting knives and hand tools for use by outdoor enthusiasts, military, police, and in a wide variety of commercial and every day individual activities. A full description of the products Coast sells may be found on its website www.coastportland.com.

2. Coast sells many of its lighting products throughout the United States, including California, this judicial district, and many foreign countries under the POLYSTEEL® trademark. A majority of its sales are through big box stores and Internet-based retailers such as Amazon. As a result of its use of the POLYSTEEL mark, Coast has built up substantial good will with customers, who have come to recognize the POLYSTEEL mark as originating with Coast. Coast applied for and was granted U.S. Trademark Registration No. 4,769,073 on the Principal Register for the POLYSTEEL® mark for "flashlights and for parts of hand tools, namely handles sold as an integral component of knives and multi-function hand tools comprised of knives, screwdrivers and pliers." A copy of the Coast POLYSTEEL trademark registration is appended hereto as Exhibit A. An Affidavit of Continued Use has been filed in a timely fashion so Coast's POLYSTEEL® trademark registration is incontestable under 22 U.S.C. § 1065.

3. One of the flashlights Coast has been selling under the POLYSTEEL trademark is its POLYSTEEL 400 flashlight. The POLYSTEEL 400 flashlight is fabricated with a flat black polycarbonate body and a stainless steel core. A

cylindrical handle portion bears an array of non-functional and distinctive, bold, inclined, raised bands. It also includes an enlarged head, an expanded tail cap with wedge-shaped indentations, an on/off switch on the very end, and a distinctive lanyard loop. The flashlight includes the COAST name extending axially in all capital letters in a monochromic display.



POLYSTEEL 400

One way in which Coast points out the durability of the POLYSTEEL 400 flashlight, and particularly its stainless steel core, is a depiction of the flashlight with half of the handle portion peeled away to expose the "tough-as-nails stainless steel core."




4. Coast has been selling its POLYSTEEL 400 flashlight throughout the United States and in this judicial district for many years. As a result of those sales, Coast has built up substantial good will with customers who have come to recognize the trade dress of this flashlight as originating with Coast.

5. Another of the lights Coast has been selling under the POLYSTEEL trademark is its POLYSTEEL 400 Swivel Light. This light is also fabricated of a flat black polycarbonate body with a stainless steel core. It includes an enlarged head with a serrated front, an expanded tail cap with wedge-shaped indentations, a magnet and an on/off switch on the very end, and the same distinctive lanyard loop used on the POLYSTEEL 400 flashlight. The light includes the COAST name extending axially in all capital letters in a monochromic display. A swivel is disposed immediately behind the head, permitting the head to swivel 180 degrees from side to side. Behind the swivel, the light narrows down in a 45-degree angle throat to a cylindrical handle portion bearing an array of non-functional and distinctive, bold, inclined, raised bands.




6. Coast has been selling its POLYSTEEL 400 Swivel light throughout the United States and in this judicial district for many years. As a result of those sales, Coast has built up substantial good will with customers, who have come to recognize the appearance and configuration of this light as originating with Coast.

7. In addition to selling the POLYSTEEL 400 Flashlight and the POLYSTEEL 400 Swivel Light, Coast has for many years sold other flashlights in its POLYSTEEL line bearing the array of non-functional and distinctive, bold, inclined, raised bands on the handle portions. They are all fabricated with a flat polycarbonate body and a stainless steel core, and each includes an enlarged head with a serrated front, and expanded tail cap with wedge-shaped indentations, an on/off switch on the

very end, and the same distinctive lanyard loop. These lights all include the COAST name extending axially in all capital letters in a monochromic display.
All but the COAST CREW POLYSTEEL 600R are fabricated entirely in black.

8. These include, among others, the POLYSTEEL 100, POLYSTEEL 200, POLYSTEEL 400 Magnet, POLYSTEEL 400R, POLYSTEEL 600, POLYSTEEL 600R, Coast Crew POLYSTEEL 600R, POLYSTEEL 700, and the POLYSTEEL 1000.



POLYSTEEL 100



POLYSTEEL 200



POLYSTEEL 400 MAGNET



POLYSTEEL 400R



POLYSTEEL 600



**POLYSTEEL 600R**



**COAST CREW POLYSTEEL 600R**



**POLYSTEEL 700**



POLYSTEEL 1000

9. As a result of the sales of polycarbonate flashlights, each having an array of bold, inclined, raised bands on the handle portion, an enlarged head with a serrated front, an expanded tail cap with wedge-shaped indentations, an on/off switch on the very end, and a distinctive lanyard loop, Coast has built up substantial good will with customers who have come to recognize the trade dress of Coast's POLYSTEEL line of lights as originating with Coast.

10. As shown in paragraph 8 above, Coast designates its flashlights using the digits 100, 200, 400, 600 and 1000 in association with the POLYSTEEL mark. These numbers are not based on any objective measurement of light output or any other characteristic of the lights. The smaller digits simply represent smaller lights and the larger digits simply designate larger lights. These digit references have been used with Coast POLYSTEEL flashlights and headlamps for many years and customers and prospective customers tend to associate such numbers with Coast, especially when used in association with its POLYSTEEL mark.

11. In addition to developing good will with customers as to the above-described flashlights, Coast has patented certain aspects of other Coast products. One such patent is U.S. Patent No. D823,508 directed to a Flashlight Bezel ("the '508 Patent"). A copy of the '508 Patent is appended as Exhibit B hereto. One of the figures from the '508 Patent is depicted below:



FIG. 1

12. The ’508 Patent was fully examined by the United States Patent and Trademark Office (“PTO”) and was duly and legally issued after such examination. Coast owns the right, title, and interest in the ’508 Patent, and the patent has been properly maintained by Coast.

**Defendants and Their Products**

13. Defendant Ideapond is, on information and belief, a Nevada limited liability company, registered to do business in California, with a principal office at 4228 Sturgeon Court, San Diego, California 92130. Ideapond is also in the business of selling flashlights and other lights. Defendant Bertken is, on information and belief, the Managing Member and CEO of Ideapond, and is intimately involved in running Ideapond and in making all major decisions for Ideapond. On information and belief, he would have made the decision to introduce the infringing products and engage in the practices accused of infringement in this lawsuit. Ideapond owns five design patents directed to various types of lights, and Bertken is the sole inventor as to all of those patents, showing how involved he is in the design of Ideapond lights. On information and belief, a majority of Defendants’ sales are through big box stores and Internet-based retailers such as Amazon.

14. On information and belief, Defendants market a wide variety of flashlights and other lights under the trademark P-STEEL. One of the flashlights they market is what they call their P-STEEL 500. Ideapond’s P-STEEL flashlights are marketed in association with the same numbers used by Coast in connection with the

marketing of its POLYSTEEL flashlights. So, for example, Defendants sell a P-STEEL 400 swivel light, a P-STEEL 500 flashlight, and a P-STEEL 1000 flashlight. Defendants represent that these digits correspond with the lumen output of the lights but, on information and belief, none of these lights put out 400, 500, or 1000 lumens.

15. On information and belief, one of the P-STEEL lights being marketed by Defendants is the P-STEEL 500 flashlight. That flashlight is depicted below.




**P-STEEL 500**

It can be seen that, like the POLYSTEEL 400 flashlight, the P-STEEL 500 flashlight is fabricated with a flat black polycarbonate body and a stainless steel core. Like the POLYSTEEL 400 flashlight, it includes a cylindrical handle portion that bears an array of non-functional, bold, inclined, raised bands. It also includes an enlarged head, an expanded tail cap with wedge-shaped indentations, an on/off switch on the very end, and a lanyard loop that is identical to that included in the POLYSTEEL line. As the Coast lights bear the COAST name extending axially in all capital letters in a monochromic display, the Ideapond light includes the DURACELL name extending axially in all capital letters in a monochromic display in approximately the same size as used by Coast. Defendants market this flashlight in association with the number 500 even though, on information and belief, this light does not put out 500 lumens of light.

16. To promote the fact that the P-STEEL 500 is durable and particularly that it includes a stainless steel core, on information and belief Defendants use a virtual

identical depiction as is used by Coast and referenced above, showing the flashlight with half of the handle portion peeled away to expose its "rugged stainless steel core."




17. Another light that is, on information and belief, marketed by Defendants under the P-STEEL mark is a swivel light that is virtually identical to the POLYSTEEL 400 Swivel Light referenced above. Like the POLYSTEEL 400 Swivel Light, the P-STEEL 400 swivel light is fabricated of a flat black polycarbonate body with a stainless steel core, and an enlarged head with a serrated front. Like the POLYSTEEL 400 Swivel Light, Defendants' P-STEEL 400 swivel light is sold under the prominent 400 designation, even though, on information and belief, Defendants' swivel light does not put out 400 lumens.

18. Like the POLYSTEEL 400 Swivel Light, the P-STEEL 400 swivel light has a swivel disposed immediately behind the head, permitting the head to swivel 180 degrees from side to side. Behind the swivel, the light narrows down in a 45-degree angle throat to a cylindrical handle portion bearing an array of non-functional and distinctive, bold, inclined, raised bands. Like the POLYSTEEL 400 Swivel Light, it includes an enlarged head with a serrated front, an expanded tail cap with wedge-shaped indentations, and a magnet and an on/off switch on the very end. Like the

Coast lights include the COAST name extending axially in all capital letters in a monochromic display, the P-STEEL 400 swivel light includes the DURACELL name extending axially in all capital letters in a monochromic display.

**P-STEEL Swivel 400**



19. Another product that, on information and belief, has been and is being sold by Defendants is their DURACELL 500 flashlight. This flashlight is depicted below:





As will be demonstrated in more detail below, the DURACELL 500 flashlight sold by Defendants can be seen to include the same bezel design claimed and shown in solid lines in the Coast ’508 Patent.

## NATURE OF THE ACTION

20. This is an action for trademark infringement and unfair competition arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., for unlawful trade practices and trademark infringement. The lawsuit pertains to Defendants' infringement of Coast's registered trademark to the POLYSTEEL mark by selling virtually identical products under the P-STEEL trademark. It also relates to trade dress infringement and unfair competition under the Lanham Act based on Defendants selling flashlights and swivel lights that are confusingly similar to Coast's POLYSTEEL 400 Flashlight and its POLYSTEEL 400 Swivel Light, again, under the P-STEEL trademark. The present action also is based on Defendants' use of a similar marketing scheme by depicting an angularly set depiction of their flashlight with a portion of the covering peeled away to expose a "tough as nails stainless steel core" (Coast) or a "rugged stainless steel core" (Defendants).

21. This is also an action against Ideapond for patent infringement under 35 U.S.C. §§ 271 and 289 for importing into, using, inducing others to use, selling and/or offering for sale flashlights that embody the design depicted and claimed in the '508 Patent.

## JURISDICTION AND VENUE

22. Coast's causes of action for federal trademark infringement and Lanham Act violations against Defendants arise under the laws of the United States, including 35 U.S.C. § 1051 *et seq*. Coast's cause of action for patent infringement against Ideapond arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*. This Court has original jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 15 U.S.C. § 1121.

23. This Court has personal jurisdiction over Ideapond because Ideapond is registered to do business in the State of California, maintains a principal office in the State of California, regularly conducts business in the State of California, and continues to commit acts of infringement and unfair competition by using, offering to

sell, and/or selling infringing products within the State of California and this district. This Court has personal jurisdiction over Bertken because, on information and belief, Bertken resides in the State of California, regularly conducts business in the State of California, and continues to commit acts of infringement and unfair competition by using, offering to sell, and/or selling infringing products within the State of California and this district.

24. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants reside in this judicial district, and a substantial part of the events giving rise to Coast's claims occurred here, including events giving rise to Coast's trademark infringement, unfair competition, and patent infringement claims. Defendants regularly transact and solicit business in this district, including with respect to the infringing activities at issue in this case.

## CLAIMS FOR RELIEF

## COUNT I

## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

25. Coast restates and realleges each of the allegations of paragraphs 1-24 as if fully set forth herein.

26. The U.S. Trademark Office duly and legally issued federal trademark registration number 4,769,073 to the POLYSTEEL® trademark on July 7, 2015, and that registration is valid and subsisting. An Affidavit of Continued Use has been filed in a timely fashion, so Coast's POLYSTEEL® trademark registration is incontestable under 22 U.S.C. § 1065.

27. Coast has used the POLYSTEEL trademark in commerce continuously from September 11, 2014 through to the present to designate itself as the source of its flashlights and parts of hand tools noted in the registration.

28. Coast is the exclusive owner of the POLYSTEEL trademark.

29. Coast uses the POLYSTEEL trademark as a designation of source and quality for its goods and services.

30. Coast uses the registration symbol "®" on its goods and in advertising associated with the POLYSTEEL trademark and its line of products.

31. As shown in paragraph 8 above, Coast designates its flashlights using the digits 100, 200, 400, 600 and 1000 in association with the POLYSTEEL mark. These numbers are not based on any objective measurement of light output or any other characteristic of the lights. The smaller digits simply represent smaller lights and the larger digits simply designate larger lights. These digit references have been used with Coast POLYSTEEL flashlights and headlamps for many years and customers and prospective customers tend to associate such numbers with Coast, especially when used in association with its POLYSTEEL mark.

32. There is a likelihood of confusion or association or sponsorship due to Defendants using the confusingly similar P-STEEL mark in the marketing of flashlights and other lights. By using the confusingly similar "P-STEEL" mark in connection with sales and promotion of its flashlights and other lights, Defendants are infringing Coast's exclusive rights in the POLYSTEEL trademark in violation of 15 U.S.C. § 1114.

33. The likelihood of confusion between Coast's use of POLYSTEEL and Defendants' use of P-STEEL for flashlights and other lights is exacerbated by (1) Defendants prominently using 400, 500, and 1000 digits in connection with the marketing of their P-STEEL lights, (2) Defendants using similar marketing materials to those used by Coast to show the ruggedness of its stainless steel core, (3) Defendants replicating the design of prominent Coast lights, (4) Defendants incorporating into their light handles a trade dress that is confusingly similar to Coast's trade dress, comprising an array of non-functional and distinctive, bold, inclined, raised bands, and (5) Defendants marketing their products through the same channels, to the same customers, using the same marketing techniques and depictions as Coast.

34. The afore-described practices of Defendants in marketing their lights is likely to confuse, deceive, and cause mistake among consumers and therefore infringes Coast's rights in its POLYSTEEL trademark in violation of 15 U.S.C. § 1114.

35. On information and belief, Defendants have deliberately attempted to deceive customers or prospective customers of Coast into believing that there is some affiliation, association, or sponsorship between Ideapond and its P-STEEL line of products and Coast and its POLYSTEEL line of products. The intentional nature of the infringement is further evidenced by the five factors noted in paragraph 33above.

36. Coast has no adequate remedy at law for Defendants' infringements of the POLYSTEEL trademark, in that: (i) the POLYSTEEL trademark is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the infringement injures and threatens to continue to injure Coast's reputation and goodwill; (iii) the injury resulting to Coast from Defendants' wrongful conduct, and the conduct itself, are continuing; and (iv) Coast would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby.

37. Unless restrained, Defendants' infringement of the POLYSTEEL trademark will continue to cause irreparable injury to Coast, both during the pendency of this action and thereafter. Coast is therefore entitled to an order from this Court preliminarily and permanently enjoining Bertken and Ideapond and its agents, employees, and others acting in concert with them, from directly or indirectly infringing the POLYSTEEL trademark in any manner, including by using the P-STEEL mark or any other mark, design, or logo that is confusingly similar to the POLYSTEEL trademark, in connection with the sale, offer for sale, advertising, or promotion of flashlights and other lights.

38. Coast is further entitled to an accounting for Defendants' profits realized due to the infringement or actual damages Coast sustained as a result of the infringement, as well as its attorneys' fees and other costs herein.

## COUNT II

## LANHAM ACT VIOLATIONS (15 U.S.C. § 1125) as to the Sale of the P-STEEL 400 Flashlight

39. Coast restates and realleges each of the allegations of paragraphs 1-38 as if fully set forth herein.

40. Coast has been and is selling its POLYSTEEL 400 Flashlight in substantial volumes throughout the United States for many years. The POLYSTEEL 400 Flashlight has a distinctive, non-functional trade dress, and customers and prospective customers have come to recognize that the POLYSTEEL 400 Flashlight comes from Coast. The flashlight has also established a reputation as a high quality product that is going to perform under the most adverse of conditions.

41. As a result of Defendants' introduction of the P-STEEL 500 flashlight, a likelihood of confusion has arisen and will continue between the trade dress of this flashlight and that of Coast's original POLYSTEEL 400 flashlight. Not only are they marketed under confusingly similar trademarks, but the non-functional configuration of Defendants' product will, on its own, lead to confusion on the part of the purchasing public. Both flashlights are fabricated with flat black polycarbonate bodies and a stainless steel core. Each includes an enlarged head with a cylindrical handle portion that bears an array of non-functional and distinctive, bold, inclined, raised bands. The tail caps of both flashlights are expanded, with wedge-shaped indentations, and include an on/off switch at the very end.

42. The likelihood of confusion between the trade dress of Coast's POLYSTEEL 400 flashlight and that of the P-STEEL 500 flashlight is exacerbated here by (1) Defendants marketing their product using a similar P-STEEL trademark, (2) Defendants using a 500 number similar to the 400 number used by Coast in connection with its POLYSTEEL 400, (3) Defendants marketing the flashlight through the same marketing channels and to the same customers, and (4) Defendants

using the same marketing techniques and depictions demonstrating their use of a rugged stainless steel core. This is likely to confuse, deceive, and cause mistake among consumers and therefore infringes Coast's rights in its POLYSTEEL 400 flashlight in violation of 15 U.S.C. § 1114.

43. The foregoing conduct and actions by Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation or association of Ideapond with Coast, or as to the sponsorship or approval of the P-STEEL 500 with Coast's POLYSTEEL 400 flashlight.

44. Defendants' actions also misrepresent the nature, characteristics, or qualities of their P-STEEL 500 flashlight.

45. On information and belief, Defendants have deliberately deceived customers or prospective customers of Coast into believing that there is some affiliation or association between Ideapond and its P-STEEL 500 flashlight and Coast's POLYSTEEL 400 flashlight. Such deliberate attempts to deceive customers is evidenced by the four factors set forth in paragraph 42 above.

46. Coast has no adequate remedy at law for the foregoing wrongful conduct of Defendants in the marketing of the P-STEEL 500 flashlight, in that: (i) Defendants' actions injure and threaten to continue to injure Coast's rights in its POLYSTEEL 400 flashlight, which cannot adequately be compensated by monetary damages; (ii) Defendants' wrongful acts injure and threaten to continue to injure Coast's reputation and goodwill; (iii) the injury resulting to Coast from Defendants' wrongful conduct, and the conduct itself, are continuing; and (iv) Coast would be required to bring a multiplicity of suits to achieve full compensation for the injuries caused thereby.

47. Unless restrained, the foregoing wrongful acts of Defendants as to the P-STEEL 500 flashlight will continue to cause irreparable injury to Coast, both during the pendency of this action and thereafter. Coast is therefore entitled to an order from this Court preliminarily and permanently enjoining Bertken and Ideapond and its agents, employees, and others acting in concert with it, from directly or indirectly: (i)

manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying the P-STEEL 500 product or any product that is confusingly similar to Coast's POLYSTEEL 400 flashlight or that tends to relate or connect the P-STEEL 500 flashlight with that of Coast, or (ii) making any false description or representation of origin concerning the P-STEEL 500 flashlight.

48. Coast is further entitled to an accounting for Defendants' profits realized due to the infringement or actual damages Coast sustained as a result of the infringement, as well as its attorneys' fees and other costs herein.

## COUNT III

## LANHAM ACT VIOLATIONS (15 U.S.C. § 1125) as to the Sale of the P-STEEL Swivel Light

49. Coast restates and realleges each of the allegations of paragraphs 1-48 as if fully set forth herein.

50. Coast has been selling its POLYSTEEL 400 Swivel Light in substantial volumes throughout the United States for many years. Given that, and the fact that the POLYSTEEL Swivel light has distinctive, non-functional trade dress, customers and prospective customers have come to recognize that the POLYSTEEL 400 Swivel light comes from Coast. The flashlight has also established a reputation as a high quality product that is going to perform under the most adverse of conditions.

51. As a result of Defendants' introduction of the P-STEEL 400 Swivel light, a likelihood of confusion has arisen and will continue between the trade dress of this flashlight and that of Coast's original POLYSTEEL 400 Swivel light. Not only are they marketed under confusingly similar trademarks, but the trade dress of Defendants' product will, on its own, lead to confusion on the part of the purchasing public. Both lights are fabricated with flat black polycarbonate bodies with a stainless steel core. They both include an enlarged head with a serrated front. In each light, a swivel is disposed immediately behind the head, permitting the head to swivel 180

degrees from side to side. Behind the swivel, the lights narrow down in a 45-degree angle throat to a cylindrical handle portion bearing an array of non-functional and distinctive, bold, inclined, raised bands. Both lights include an expanded tail cap with a magnet and an on/off switch at the very end.

52. The likelihood of confusion between the trade dress of Coast's POLYSTEEL 400 Swivel Light and the P-STEEL 400 swivel light is exacerbated here by (1) Defendants marketing their product under a confusingly similar P-STEEL trademark, (2) Defendants prominently using the number 400 in connection with the marketing of the product like Coast's POLYSTEEL 400 Swivel Light, even though, on information and belief, the P-STEEL 400 swivel light does not put out 400 lumens, and (3) Defendants selling the P-STEEL 400 swivel light through the same marketing channels and to the same customers. This is likely to confuse, deceive, and cause mistake among consumers and therefore infringes Coast's rights in its POLYSTEEL 400 Swivel Light in violation of 15 U.S.C. § 1114.

53. The foregoing conduct and actions by Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Ideapond with Coast, or as to the sponsorship or approval of the P-STEEL 400 swivel light with Coast's POLYSTEEL 400 Swivel Light.

54. Defendants' actions also misrepresent the nature, characteristics, or qualities of their P-STEEL 400 swivel light.

55. On information and belief, Defendants have deliberately deceived customers or prospective customers of Coast into believing that there is some affiliation or association between Ideapond and its P-STEEL 400 swivel light and Coast's POLYSTEEL 400 Swivel Light. Such deliberate attempts to deceive customers is evidenced by the three factors set forth in paragraph 52 above.

56. Coast has no adequate remedy at law for the foregoing wrongful conduct of Defendants in the marketing of their P-STEEL 400 swivel light, in that: (i) Defendants' actions injure and threaten to continue to injure Coast's rights in the trade

dress of its POLYSTEEL 400 Swivel Light, which cannot adequately be compensated by monetary damages; (ii) the wrongful acts of Defendants injure and threaten to continue to injure Coast's reputation and goodwill; (iii) the injury resulting to Coast from Defendants' wrongful conduct, and the conduct itself, are continuing; and (iv) Coast would be required to bring a multiplicity of suits to achieve full compensation for the injuries caused thereby.

57. Unless restrained, the foregoing wrongful acts of Defendants as to their P-STEEL 400 swivel light will continue to cause irreparable injury to Coast, both during the pendency of this action and thereafter. Coast is therefore entitled to an order from this Court preliminarily and permanently enjoining Bertken and Ideapond and its agents, employees, and others acting in concert with it, from directly or indirectly: (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying their P-STEEL 400 swivel light or any product that is confusingly similar to Coast's POLYSTEEL 400 Swivel Light or that tends to relate or connect their P-STEEL 400 swivel light with that of Coast, or (ii) making any false description or representation of origin concerning the P-STEEL 400 swivel light.

58. Coast is further entitled to an accounting for Defendants' profits realized due to the infringement or actual damages Coast sustained as a result of the infringement, as well as its attorneys' fees and other costs herein.

## COUNT IV

## <u>LANHAM ACT VIOLATIONS (15 U.S.C. § 1125)</u><br><u>as to the Sale of Lights Bearing an Array of Bold, Raised, Inclined Bars at the Handle</u>

59. Coast restates and realleges each of the allegations of paragraphs 1-58 as if fully set forth herein.

60. Coast has been selling its POLYSTEEL line of lights in substantial volumes throughout the United States for many years. Given that, and the fact that the POLYSTEEL line of lights include a trade dress with handle portions having a distinctive array of non-functional and distinctive, bold, raised, inclined bars, customers and prospective customers have come to recognize Coast's POLYSTEEL line of lights with this trade dress. The line of flashlights bearing this distinctive trade dress has also established a reputation as a high quality line of products that is going to perform under the most adverse of conditions.

61. The trade dress of Coast's POLYSTEEL line of lights that include handles with an array of non-functional and distinctive, bold, raised, inclined bars are designed to have an attractive, rugged appearance. There are many ways to make the handle easy to grip without using an array of bold, raised, inclined bars, so this array is non-functional, protectable trade dress.

62. As a result of Defendants' introduction of at least their 400, 500 and 1000 P-STEEL lights that also have a trade dress with handle including an array of non-functional, bold, raised, inclined bars, a likelihood of confusion has arisen and will continue between at least these flashlights and Coast's original POLYSTEEL line of lights. Not only are the P-STEEL flashlights marketed under confusingly similar trademarks, but the trade dress will, on its own, lead to confusion on the part of the purchasing public.

63. The likelihood of confusion between the trade dress of handles that include an array of bold, raised, inclined bars is exacerbated here by Defendants (1) marketing their products using a similar P-STEEL trademark, (2) using 400, 500 and 1000 numbers similar to the numbers used by Coast in connection with its POLYSTEEL line of lights, (3) marketing the lights through the same marketing channels and to the same customers as Coast's POLYSTEEL line of lights, and (4) using the same marketing techniques and depictions demonstrating its use of a rugged stainless steel core. This is likely to confuse, deceive, and cause mistake among

consumers and therefore infringes Coast's rights in its handles that bear an array of bold, raised, inclined bars in violation of 15 U.S.C. § 1114.

64. The foregoing conduct and actions by Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Ideapond with Coast, or as to the sponsorship or approval of Ideapond's lights.

65. Defendants' actions by incorporating a trade dress on their handles that bear an array of bold, raised bands in their lights also misrepresent the nature, characteristics, or qualities of their lights.

66. On information and belief, Defendants have deliberately deceived customers or prospective customers of Coast into believing that there is some affiliation or association between Ideapond and Coast in their mutual use of light handles that bear an array of bold, raised, inclined bars. This deliberate attempt to deceive customers and prospective customers is not only evidenced by the striking similarity between the trade dress on the handles of the lights but is also demonstrated by the four additional factors noted in paragraph 63 above.

67. Coast has no adequate remedy at law for the foregoing wrongful conduct of Defendants in the marketing of their lights having handles that bear an array of bold, raised, inclined bars, in that: (i) Defendants' actions injure and threaten to continue to injure Coast's rights in its trade dress of light handles that bear an array of bold, raised, inclined bars, which cannot adequately be compensated by monetary damages; (ii) the wrongful acts of Defendant injure and threatens to continue to injure Coast's reputation and goodwill; (iii) the injury resulting to Coast from Defendants' wrongful conduct, and the conduct itself, are continuing; and (iv) Coast would be required to bring a multiplicity of suits to achieve full compensation for the injuries caused thereby.

68. Unless restrained, the foregoing wrongful acts of Defendants as to the use of Coast's trade dress will continue to cause irreparable injury to Coast, both during

the pendency of this action and thereafter. Coast is therefore entitled to an order from this Court preliminarily and permanently enjoining Bertken and Ideapond and its agents, employees and others acting in concert with it, from directly or indirectly: (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying lights that have a trade dress with handles that include an array of bold, raised, inclined bars or any product bearing a trade dress that is confusingly similar to Coast's handles that bear an array of bold, raised, inclined bars, or (ii) making any false description or representation of origin concerning Defendants' lights.

69. Coast is further entitled to an accounting for Defendants' profits realized due to the infringement or actual damages Coast sustained as a result of the infringement, as well as its attorneys' fees and other costs herein.

## COUNT V

## PATENT INFRINGEMENT (35 U.S.C. §§ 271 and 289)

70. Coast restates and realleges each of the allegations of paragraphs 1-69, as if fully set forth herein.

71. Ideapond has infringed Coast's '508 Patent within this judicial district by importing into, using, inducing others to use, selling and/or offering for sale flashlights that embody the design claimed in the '508 Patent, in violation of 35 U.S.C. §§ 271 and 289.

72. Ideapond is not licensed or otherwise authorized by Coast to use, import, sell, or offer to sell any flashlight whose design is covered by the '508 Patent, and its conduct is, in every instance, without Coast's consent.

73. The design of Ideapond's DURACELL 500 flashlight so closely resembles the design claimed in the '508 Patent that an ordinary observer will perceive the overall appearance of the products to be basically the same. Comparisons

between Figure 2 of the ’508 Patent and the DURACELL 500 show the distinct similarities.




74. As a result of Ideapond’s infringement of the ’508 Patent, Coast is entitled to recover from Ideapond damages adequate to compensate for the infringement, but in no event less than a reasonable royalty as provided for in 35 U.S.C. § 284.

75. Due to Ideapond’s infringement of the ’508 Patent, Coast has suffered, is suffering, and will continue to suffer irreparable injury and damage for which Coast has no adequate remedy at law. Coast is therefore entitled to a permanent injunction against Ideapond’s further infringing conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Coast respectfully requests that the Court enter judgment in its favor against Defendants, granting the following relief:

A. A judgment and declaration that Defendants have infringed Coast's federal trademark registration for the POLYSTEEL trademark, and that Defendants' infringement has been deliberate and willful, in violation of 15 U.S.C. §§ 1114 and 1125;

B. A judgment and declaration that Defendants have infringed Coast's product configuration trade dress in both Coast's POLYSTEEL 400 flashlight and in Coast's POLYSTEEL 400 Swivel light, and that Defendants' infringement of the product configuration trade dress has been with knowledge, in bad faith, and with the intent to cause confusion or mistake or to deceive.

C. A judgment and declaration that Defendants' have infringed Coast's trade dress in the handles of their lights by incorporating an array of bold, raised bands, and that Defendants' infringement of the trade dress has been with knowledge, in bad faith, and with the intent to cause confusion or mistake or to deceive.

D. An award of compensatory damages, including consequential and incidental damages, in favor of Coast and against Defendants in an amount to be proven at trial;

E. An award of enhanced damages or lost profits, whichever is proven to be greater, in favor of Coast and against Defendants pursuant to 15 U.S.C. § 1117 and as otherwise provided by law;

F. An accounting and award to Coast and against Defendants of all of their profits pursuant to 15 U.S.C. § 1117;

G. An award of Coast's costs of suit and reasonable attorneys' fees incurred in bringing this action pursuant to 15 U.S.C. § 1117;

H. An award of pre- and post-judgment interest at the maximum rate allowed by law;

I. A grant of preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a), enjoining Bertken and Ideapond and their agents, servants, officers, directors, employees, affiliated entities and all persons acting in concert or privity with them, from infringing the POLYSTEEL trademark (including by use of the P-STEEL mark), from marketing or selling it P-STEEL 400 flashlight and their P-STEEL 400 swivel light under the P-STEEL mark or under any other mark, and from using a trade dress incorporated into the handle of a light including an array of bold, raised bands, and further requiring Defendants to account for and destroy, or deliver up for destruction, all goods, advertisements, packaging, or other promotional materials bearing an infringing name or mark;

J. A judgment and declaration that Ideapond has infringed Coast's '508 Patent;

K. A permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Ideapond and its agents, servants, officers, directors, employees, affiliated entities and all persons acting in concert or privity with it, from infringing the '508 Patent;

L. A judgment and order requiring Ideapond to pay Coast its entire profits under 35 U.S.C. § 289, or all damages caused by its infringement of the '508 Patent, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284;

M. An order pursuant to 15 U.S.C. § 1116(a) directing Defendants to file with the court and serve on Coast a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

N. Such other and additional relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Coast respectfully requests a trial by jury of all issues so triable.

Dated this 8th day of January, 2020.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By: s/Peter E. Heuser
Peter E. Heuser

MUSICK, PEELER & GARRETT LLP.
Michael J. Hickman

*Attorneys for Plaintiff*
*Coast Cutlery Co. dba Coast Products*